**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROBERT L. REESE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTAR ENERGY, INC., CHARLES Q. CHANDLER IV, MOLLIE HALE CARTER, R.A. EDWARDS, JERRY B. FARLEY, RICHARD L. HAWLEY, ANTHONY ISAAC, SANDRA A. J. LAWRENCE, MARK A. RUELLE, S. CARL SODERSTROM JR., GREAT PLAINS ENERGY INCORPORATED, MONARCH ENERGY HOLDING, INC., and KING ENERGY, INC.,<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR VIOLATION FO THE SECURITIES EXCHANGE ACT OF 1934<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 10, 2017 (the "Proposed Transaction"), pursuant to which Westar Energy, Inc. ("Westar" or the "Company") will be acquired by Great Plains Energy Incorporated ("Parent"), Monarch Energy Holding, Inc. ("Holdco"), and King Energy, Inc. ("Merger Sub," and together with Parent and Holdco, the "Buyers").

2. On July 9, 2017, Westar's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with the Buyers.[1]  Pursuant to the terms of the Merger Agreement, each share of Westar common stock will be converted into the right to receive one share of Holdco common stock.  As a result of the Proposed Transaction, Parent will merge with and into Holdco, with Holdco continuing as the surviving corporation, and Merger Sub will merge with and into Westar, with Westar continuing as the surviving corporation.  Following the consummation of the Proposed Transaction, Holdco will be the direct parent of Westar and Parent's direct subsidiaries.

3. On September 14, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a

---

[1] The Merger Agreement is an amendment to an agreement and plan of merger dated May 29, 2016 (the "Original Merger Agreement") among Wester, Parent, and GP Star, Inc. ("GP Star"). GP Star withdrew from the Original Merger Agreement and is a party to the Merger Agreement solely for the purpose of withdrawing from the Original Merger Agreement.  Under the terms of the Original Merger Agreement, Westar's stockholders would have received $51.00 in cash and $9.00 in Parent common stock for each share of Westar common stock.  On April 19, 2017, the Kansas Corporation Commission issued an order finding that the original proposed merger was not in the public interest.

corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Westar common stock.

9. Defendant Westar is a Kansas corporation and maintains its principal executive offices at 818 South Kansas Avenue, Topeka, Kansas 66612. Westar's common stock is traded on the NYSE under the ticker symbol "WR."

10. Defendant Charles Q. Chandler IV ("Chandler") has served as a director of Westar since 1999 and as Chairman of the Board of Westar since 2002.

11. Defendant Mollie Hale Carter ("Carter") has served as a director of Westar since 2003.

12. Defendant R.A. Edwards ("Edwards") has served as a director of Westar since 2001.

13. Defendant Jerry B. Farley ("Farley") has served as a director of Westar since 2004.

14. Defendant Richard L. Hawley ("Hawley") has served as a director of Westar since 2011.

15. Defendant Anthony "Tony" Isaac ("Isaac") has served as a director of Westar since 2003.

16. Defendant Sandra A. J. Lawrence ("Lawrence") has served as a director of Westar since 2004.

17. Defendant Mark A. Ruelle ("Ruelle") has served as a director of Westar since 2011. Ruelle has served as the Company's President and Chief Executive Officer ("CEO") since August 2011.

18. Defendant S. Carl Soderstrom Jr. ("Soderstrom") has served as a director of Westar since 2010.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is Missouri corporation and a party to the Merger Agreement.

21. Defendant Holdco is a Missouri corporation and a party to the Merger Agreement.

22. Defendant Merger Sub is a Kansas corporation, a wholly-owned subsidiary of Holdco, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Westar (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of July 6, 2017, there were approximately 142,093,387 shares of Westar common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm

plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

30. Westar is the largest electric energy provider in Kansas.

31. The Company provides generation, transmission, and distribution to approximately 687,000 customers in east and east-central Kansas.

32. According to its website, Westar is dedicated to operating the best electric utility in the Midwest and providing quality service at below average prices.

33. The Company's energy centers in eleven Kansas communities generate more than 7,000 megawatts of electricity, and it operates and coordinates 34,000 miles of transmission and distribution lines.

34. On July 9, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by the Buyers.

35. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

36. Further, the Company must promptly advise the Buyers of any proposals or inquiries received from other parties.

37. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants the Buyers a "matching right" with respect to any "Superior Proposal" made to the Company.

38. Further locking up control of the Company in favor of the Buyers, the Merger Agreement provides for a "termination fee" of $190 million payable by the Company to the Buyers if the Individual Defendants cause the Company to terminate the Merger Agreement.

39. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40. The merger consideration to be provided to plaintiff and the Class in the Proposed Transaction appears inadequate.

41. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

42. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

43. Meanwhile, following the close of the Proposed Transaction, Individual Defendant Ruelle will be appointed Chairman of the Board of Holdco for at least a three-year term.

44. Westar's current Senior Vice President and Chief Financial Officer ("CFO"), Tony Somma, will become Executive Vice President and CFO of Holdco, and Greg Greenwood, Westar's Senior Vice President of Strategy, will become Holdco's Executive Vice President of Strategy and Chief Administrative Officer.

45. Additionally, several of the Individual Defendants, including Individual Defendant Chandler, will be appointed to the Holdco board of directors following the merger.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

46. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

47. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

48. The Registration Statement omits material information regarding Westar's financial projections, the Buyers' financial projections, and the analyses performed by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim Securities").

49. With respect to the "Westar Energy Forward-Looking Financial Information," the

7

Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

50. With respect to the "Great Plains Energy Forward-Looking Financial Information," the Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

51. The Registration Statement fails to disclose Holdco's projections and the "pro forma combined forward looking financial information."

52. Further, the Registration Statement fails to disclose the estimated synergies expected to result from the Proposed Transaction and the estimated costs to achieve such synergies as prepared by Westar's management.

53. With respect to Guggenheim's *Discounted Cash Flow Analyses* of Westar, the Registration Statement fails to disclose: the forecasted after-tax unlevered free cash flows for Westar used by Guggenheim in the analysis and the constituent line items used to calculate the after-tax unlevered free cash flows; the estimate of Westar's terminal/continuing value; the inputs and assumptions underlying the discount rate range of 4.5%-5.5%; and the implied perpetuity growth rates applied by Guggenheim.

54. With respect to Guggenheim's *Discounted Cash Flow Analyses* of Parent, the Registration Statement fails to disclose: the forecasted after-tax unlevered free cash flows for Parent used by Guggenheim in the analysis and the constituent line items used to calculate the after-tax unlevered free cash flows; the estimate of Parent's terminal/continuing value; the inputs and assumptions underlying the discount rate range of 4.25%-5.25%; and the implied perpetuity growth rates applied by Guggenheim.

55. With respect to Guggenheim's *Discounted Cash Flow Analyses* of Holdco, the Registration Statement fails to disclose: the forecasted after-tax unlevered free cash flows for

Holdco and the constituent line items used to calculate the after-tax unlevered free cash flows; the estimate of Holdco's terminal/continuing value; the inputs and assumptions underlying the discount rate range of 4.25%-5.50%; and the implied perpetuity growth rates applied by Guggenheim.

56. With respect to Guggenheim's *Westar Energy EPS Accretion/(Dilution) Analysis*, the Registration Statement fails to disclose the expected synergies and related costs to achieve such synergies used by Guggenheim in the analysis.

57. With respect to Guggenheim's *Westar Energy and Great Plains Energy Relative Contributions Analysis*, the Registration Statement fails to disclose: the book value of equity and the combined company's FY 2018E through FY 2020E average estimated unadjusted net income, adjusted net income, leverage-adjusted EBITDA, and free cash flow.

58. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

59. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Recommendations of the Westar Energy Board and its Reasons for the Mergers"; (iii) "Opinion of Westar Energy's Financial Advisor"; and (iv) "Forward-Looking Financial Information."

60. Additionally, the Registration Statement omits material information regarding potential conflicts of interest of Guggenheim.

61. Specifically, the Registration Statement fails to disclose the amount of the "discretionary transaction bonus" payable to Guggenheim as well as the conditions under which such payment will be made.

62. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

63. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Recommendations of the Westar Energy Board and its Reasons for the Mergers"; and (iii) "Opinion of Westar Energy's Financial Advisor."

64. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Westar's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Westar**

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Westar is liable as the issuer of these statements.

67. The Registration Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

68. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

69. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

70. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

71. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

72. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyers

73. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74. The Individual Defendants and the Buyers acted as controlling persons of Westar within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Westar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

75. Each of the Individual Defendants and the Buyers was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

77. The Buyers also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

78. By virtue of the foregoing, the Individual Defendants and the Buyers violated Section 20(a) of the 1934 Act.

79. As set forth above, the Individual Defendants and the Buyers had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are

threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Plaintiff designates Kansas City, Kansas as the place of trial.

Dated:  October 6, 2017                **NORRIS & KEPLINGER, LLC**

By:  */s/ Bruce Keplinger*
Bruce Keplinger (#09562)
Corporate Woods, Building 32
9225 Indian Creek Parkway, Suite 750
Overland Park, KS 66210
Phone: (913) 663-2000
Fax: (913) 663-2006
bk@nkfirm.com

OF COUNSEL:

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310
GMS@rl-legal.com

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**
300 Mt. Lebanon Boulevard
Suite 206-B
Pittsburgh, PA 15234
(412) 391-5164

*Attorneys for Plaintiff*